IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **FREDDIE AMERICA** § | |
| § | |
| v.  § | NO. 4:25-CV-01361-SDJ-BD |
| § | |
| **TEXAS COMPTROLLER OF PUBLIC** § | |
| **ACCOUNTS,** *et al.* § | |

**ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On December 9, 2025, plaintiff Freddie America, also known as Freddie Luis Lopez, sued the acting Texas Comptroller of Public Accounts, Kelly Hancock, challenging an administrative rule addressing Texas's historically underutilized businesses program. Dkt. 1; *see* Tex. Gov't Code ch. 2161 (establishing the program). Concurrently with his complaint, America moved for a temporary restraining order ("TRO") and preliminary injunction. Dkt. 2. Hancock has not yet been served or made an appearance. The court will recommend that America's motion be denied to the extent it requests a TRO and will defer a ruling on the motion for a preliminary injunction. The court will withdraw the order it issued yesterday. Dkt. 4.

**BACKGROUND**

The historically underutilized businesses program was created by the Texas legislature in 1999 to govern state procurement and contracting procedures. An Act Relating to State Agency Practices and Duties, Including Codification of Certain State Agency Practices and Duties Currently Prescribed by the General Appropriations Act, S.B. 178, 76th Reg. Sess. (Tex. 1999). The law defines a "historically underutilized business" as one owned by an "economically disadvantaged person," a term that encompasses "Black Americans," "Hispanic Americans," "women," "Asian Pacific Americans," "Native Americans," and "veterans . . . who have suffered at least 20 percent service-connected disability." Tex. Gov't Code § 2161.001. The law directs the comptroller to "seek the advice of the governor, legislature, and state agencies in

identifying and developing opportunities for historically underutilized businesses"; "offer historically underutilized businesses assistance and training regarding state procurement procedures"; "advise historically underutilized businesses of available state contracts"; and "send historically underutilized businesses an orientation package on certification or recertification." *Id.* § 2161.062. It also directs the comptroller to create a mentor–protégé program for historically underutilized businesses, *id.* § 2161.065, and design forums for such businesses to deliver presentations to state agencies, *id.* § 2161.066. State agencies and the comptroller are each required to "make a good faith effort to increase the contract awards for the purchase of goods or services that the agency expects to make during a fiscal year to historically underutilized businesses." *Id.* §§ 2161.181–.182.

According to the complaint, America owns a business that the comptroller previously certified as historically underutilized. Dkt. 1 at 3. On December 2, 2025, Hancock announced that the historically underutilized business program would be "restructured" to "focus[] exclusively on small businesses owned and operated by veterans with a 20 percent or higher service-connected disability." Press Release, Tex. Comptroller of Pub. Accts., Acting Texas Comptroller Kelly Hancock Announces Emergency Rules for Revamped VetHUB Program (Dec. 2, 2025). That rule has not yet been published in the Texas Register. Because of the rule, America's business is no longer eligible for benefits under the program. Dkt. 1 at 5–6.

America argues that the rule is unconstitutional and inconsistent with Texas law. He asks the court to enjoin its enforcement.

## LAW

Federal Rule of Civil Procedure 65(b)(1) provides that

> the Court may issue a temporary restraining order without written or oral notice to the adverse party only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

>  (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

A TRO is "an extraordinary and drastic remedy." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974); *see also Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976) (explaining that "the office of a temporary restraining order is to preserve, for a very brief time, the status quo, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction").

There are four prerequisites to the entry of a TRO. The movant must demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause the defendant, and (4) that the injunction will not disserve the public interest. *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999); *see Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (noting that the standards for TROs and preliminary injunctions are the same). A party seeking injunctive relief must "unequivocally show the need for its issuance," *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997), by introducing sufficient evidence to justify the granting of a TRO, *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005). The movant must prove each of the four elements before injunctive relief can be granted. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The decision to grant or deny a TRO lies within the court's discretion. *Id.*

## DISCUSSION

### I. America's Motion for a TRO

Federal Rule of Civil Procedure 65(b)(1)(B) provides that a TRO may issue without notice to the opposing party only if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." *See Jones v. Bush*, No. 3:00-cv-2543-D, 2000 WL

3

1725195, at *1 (N.D. Tex. Nov. 20, 2000) (explaining that "[a]n *ex parte* [TRO] is granted only in extraordinary circumstances where the party seeking such relief will suffer immediate and irreparable injury not only by the failure to grant the [TRO] but by affording the restrained party advance knowledge that such relief is to be entered"). Pro se plaintiffs are not excused from compliance with that rule. *Thomson v. Veterans United Home Loans*, No. 4:25-cv-00545-MJT-CLS, 2025 WL 1784502, at *2 n.1 (E.D. Tex. May 28, 2025) (collecting cases), *report and recommendation adopted sub nom. Thompson v. Veterans United Home Loans*, No. 4:25-cv-00545-MJT, 2025 WL 1782557 (E.D. Tex. May 30, 2025).

Nothing in America's motion indicates that Hancock received actual notice of this action or notice that America seeks ex parte relief. Nor does anything in the motion describe America's efforts to notify Hancock.

Failure to establish any TRO prerequisite defeats the right to relief. *N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*, No. 23-60483, 2025 WL 980568, at *2 (5th Cir. Apr. 1, 2025) (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990)). America's failure to give notice or describe his efforts to provide it warrants an order denying the motion. *Thomson*, 2025 WL 1784502, at *2.

## II. The Court's Previous Order to Pay the Filing Fee

America paid the filing fee with his complaint on December 9, 2025. Docket Entry for Dec. 9, 2025. But due to a clerical error, that fact was not reflected on the docket. On December 11, 2025, the court ordered America to either pay the filing fee or move to proceed in forma pauperis, noting that it would take no action until one of those things had happened. Dkt. 4. That order was docketed at 4:02 p.m. on December 11, 2025. At 4:16 p.m. on December 11, 2025, the clerk entered a docket entry reflecting America's payment of the filing fee. The court's previous order will be withdrawn.

### ORDER AND RECOMMENDATION

It is **ORDERED** that the order to pay the filing fee, Dkt. 4, is **WITHDRAWN**.

It is **RECOMMENDED** that the motion for a TRO and preliminary injunction, Dkt. 2, be **DENIED** to the extent it requests a TRO. The court will withhold ruling on America's request for a preliminary injunction until Hancock has appeared.

* * *

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 12th day of December, 2025.

_____
Bill Davis
United States Magistrate Judge